(June 17, 2014)

■ MILLER TABAK + CO., LLC, Respondent, v SENETEK PLC, Appellant. [988 NYS2d 141]—

Judgment, Supreme Court, New York County (Eileen Bransten, J.), entered November 20, 2012, awarding plaintiff dam-

ages, and bringing up for review an order, same court and Justice, entered September 24, 2012, which denied defendant's motion to dismiss the complaint pursuant to CPLR 3211, and granted plaintiff's cross motion for summary judgment, reversed, on the law, with costs, the judgment vacated, plaintiff's cross motion denied, and defendant's motion granted. The Clerk is directed to enter judgment in defendant's favor dismissing the complaint.

The parties entered into a letter agreement on or about October 21, 2009, whereby defendant engaged plaintiff as its exclusive financial advisor "in connection with a review of strategic options and development of a business plan to evaluate and make recommendations for maximizing the assets of [defendant]." The agreement contemplated that the engagement "may potentially result in a sale, transfer or other disposition . . . [of] a portion of the assets, businesses or securities of [defendant]," therein defined as a "transaction." The agreement further provided that in the event of a transaction, as defined, plaintiff was entitled to a "transaction fee."

Plaintiff seeks to recover a "transaction fee" in connection with defendant's unsuccessful effort to acquire a gold mine in Nevada. As an initial step toward that goal, defendant entered into a participation agreement with nonparty Platinum Long Term Growth LLC, a New York hedge fund, whereby defendant purchased for $5 million a participation interest in certain notes issued to Platinum by Firstgold, a company in chapter 11 bankruptcy proceedings. The collateral for the notes was the aforementioned gold mine. Defendant's ability to acquire the mine was contingent on, among other things, obtaining the necessary financing. The participation agreement contained a mechanism whereby the parties could unwind the deal. As the dissent notes, the acquisition was never completed because defendant failed to obtain the necessary financing, and exercised its right to unwind the deal.

In our view, the motion court unreasonably construed the parties' agreement in arriving at the conclusion that plaintiff was entitled to a "transaction fee" in connection with defendant's aborted acquisition of a participation interest in the notes. The letter agreement provides that plaintiff is entitled to a "transaction fee" following the consummation or closing of a "transaction," which it defines as the "sale, transfer or other disposition . . . [of] a portion of the assets, businesses or securities of [defendant]." The acquisition in question was admittedly not a "sale" or "transfer." Nor can it be considered a "disposition," as plaintiff contends. The term "disposition" does not ap-

pear in isolation in the agreement, but as a catchall at the end of the phrase "sale, transfer or other disposition." Thus, under the principle of ejusdem generis, the general language "or other disposition" must be construed as limited in scope by the more specific words "sale" and "transfer" that preceded it (*see 242-44 E. 77th St., LLC v Greater N.Y. Mut. Ins. Co.*, 31 AD3d 100, 103-104 [1st Dept 2006]).

Other provisions of the engagement letter confirm that plaintiff was retained to assist defendant with potential sales of its assets, businesses or securities. In describing the "advice and assistance" plaintiff might provide, the agreement makes specific reference to the possible "sale of [defendant's] biotech or other businesses," and the "private placement of [defendant's] securities." The agreement also anticipates that plaintiff might render "assist[ance] . . . in the preparation of a memorandum describing the Company and its business operations for distribution to potential parties to a Transaction," i.e., materials prepared for potential investors in defendant. The agreement also authorizes plaintiff to place "customary tombstone announcements or advertisements in financial newspapers and journals," i.e., announcements apprising potential investors of a securities offering.

The more general language in the description of the scope of the "engagement," i.e., "a review of strategic options and development of a business plan to evaluate and make recommendations for maximizing the assets of [defendant]" does not illuminate the question of what constitutes a "disposition." In any event, assuming a conflict, the more specific provision concerning the definition of "transaction" would control over the general provisions in the agreement.

Further, as noted by the dissent, the acquisition of the gold mine was never completed or consummated, and the deal was unwound. Thus, the deal lacked the finality necessary to constitute a "disposition," as that term is commonly understood.

Accordingly, defendant's motion to dismiss should have been granted, and plaintiff's cross motion for summary judgment should have been denied. Concur—Gonzalez, P.J., Tom, Freedman and Manzanet-Daniels, JJ.

Saxe, J., dissents in part in a memorandum as follows: While I concur with the majority to the extent it reverses the grant of summary judgment to plaintiff, I disagree with the grant of defendant's motion to dismiss the complaint pursuant to CPLR 3211.

Plaintiff is an institutional equity research and trading firm. Defendant is a technology and development company. In October

2009, the parties entered into a letter agreement pursuant to which plaintiff was to act as financial advisor to defendant, assisting defendant in business strategy and potential mergers or other transactions. The agreement provides that defendant would pay plaintiff a fee if defendant entered into a "sale, transfer or other disposition . . . [of] a portion of the assets, businesses or securities of the Company, whether by merger, consolidation or other business combination, negotiated purchase, tender or exchange offer, option, leveraged buyout, restructuring or otherwise" during, and for 12 months after the expiration of, the agreement. Plaintiff proceeded to advise defendant with regard to various opportunities in the mining industry.

In the transaction at issue, defendant purchased, from an entity called Platinum, notes in another entity, called Firstgold, with a face value of $7 million, for a purchase price of $5 million. The purchase of the notes was in contemplation of defendant's acquisition from Firstgold of a gold mine in Nevada. When defendant failed to obtain the contemplated additional financing for the purchase of the mine, it sold back the notes to Platinum, pursuant to the terms of the purchase agreement with Platinum. Plaintiff claims that it is entitled to a fee for that transaction.

The initial question is whether defendant's purchase of the Firstgold notes constituted the contemplated type of "sale, transfer or other disposition" of defendant's assets, businesses or securities, as that term is defined by the parties' agreement. While the motion court found that defendant's purchase of those notes unquestionably constituted such a "sale, transfer or other disposition," the majority finds to the contrary, and therefore dismisses the complaint.

In my view, questions of fact preclude determination of this issue as a matter of law. I reject the majority's reasoning that the term "disposition" in the contract's phrase "sale, transfer *or other disposition*" must be interpreted as limited in scope by the words "sale" and "transfer," so as to refer only to a transaction by which defendant divests itself of assets. The phrase may equally well be understood to incorporate a transaction in which defendant's funds are used to purchase other assets. This is particularly so since the agreement provides that plaintiff would assist defendant in potential mergers or other transactions, not just transactions in which defendant *sold* rather than *purchased* assets.

The principle of ejusdem generis, as useful as it may sometimes be in, for example, interpreting insurance policy terms

(*see 242-44 E. 77th St., LLC v Greater N.Y. Mut. Ins. Co.*, 31 AD3d 100, 103-104 [1st Dept 2006]), or statutes (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 239 [a] ["words employed in a statute are construed in connection with, and their meaning is ascertained by reference to the words and phrases with which they are associated"]), is not helpful in interpreting the relevant phrase of the parties' letter agreement. Since the proper interpretation of the agreement in this regard is unclear, I would deny summary judgment and leave the intent of the parties to be determined at trial.

Further, I find potential merit to defendant's contention that the purchase of the Firstgold notes was not the type of "disposition" contemplated by the agreement because it was conditional rather than final, and the purchase was ultimately rescinded. I believe that the agreement is unclear on this point as well, and thus, that neither party has yet established entitlement to judgment as a matter of law on the question of whether plaintiff is entitled to a fee based on the particular transaction at issue.

I also perceive ambiguity as to whether the agreement required plaintiff to have brought about, or taken part in, the transaction, to be entitled to a fee. Section 2 of the agreement states that "[t]he Engagement may potentially result in a sale, transfer or other disposition." The use of "result" may be understood to indicate that the engagement for which a fee is earned is one which resulted from the engagement. Since it cannot be said with certainty what the parties intended in this regard, this aspect of the contract's interpretation also requires a trial.

Moreover, a question of fact is presented as to whether plaintiff, in fact, played such a part in the transaction. The employee's affidavit submitted by plaintiff does not conclusively establish that the transaction here resulted from plaintiff's efforts, and therefore plaintiff's entitlement to judgment is not established as a matter of law. The employee's stated "awareness" of the possibility of such a purchase transaction does not suffice, and the "fyi" emails sent to him the day before the purchase closed do not indicate or refer to any efforts by plaintiff in connection with the deal.

For all the foregoing reasons, I would deny both plaintiff's motion for summary judgment and defendant's motion to dismiss the complaint.